# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BETTY LOREN-MALTESE, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 10 C 6415 |
| | ) |
| KRISTINE PHILLIPS, Chief | ) |
| United States Probation Officer, | ) |
| Northern District of Illinois, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM OPINION

Before the court is the petition of Betty Loren-Maltese for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. For the following reasons, the petition is dismissed for lack of jurisdiction.

## BACKGROUND

Petitioner, Betty Loren-Maltese, was convicted in August 2002 of conspiring to participate in the conduct of Specialty Risk Consultants ("SRC"), an entity created by two of her co-defendants, through a pattern of racketeering activity that included a scheme to defraud the Town of Cicero, Illinois (the "Town"), in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(d). She was also convicted of devising and participating in a scheme to defraud and to obtain money and property from the Town and to deprive the Town and its citizens of

their intangible right to the honest services of their officials, in violation of the wire fraud statute, 18 U.S.C. §§ 1343 and 1346, and the mail fraud statute, 18 U.S.C. §§ 1341 and 1346. Additionally, in a special verdict, the jury found that Loren-Maltese had acquired and maintained interests in real property commonly known as the Four Seasons Golf Course in Pembine, Wisconsin and in funds in the amount of $3,250,000 in violation of RICO and that her interest in the real property and funds was subject to forfeiture.

In January 2003, Loren-Maltese was sentenced to 97 months on the RICO count and 60 months on the wire and mail fraud counts, all to run concurrently, and three years of supervised release. She was fined $100,000 and ordered to pay restitution to the Town in the amount of $8,362,733.[1]

On appeal, the Seventh Circuit affirmed the conviction but ordered the defendants resentenced on the government's cross-appeal due to an error in calculating the loss caused by the fraud. United States v. Spano, 421 F.3d 599 (7th Cir. 2005). We imposed the same sentence on remand. Loren-Maltese again appealed, and the Seventh Circuit affirmed. United States v. Spano, 476 F.3d 476 (7th Cir. 2007). In July 2007, Loren-Maltese sought post-conviction relief under 28 U.S.C. § 2255, which was denied. We

---

[1] Liability for the full amount of restitution was joint and several with a number of co-defendants.

denied her request for a certificate of appealability, as did the Seventh Circuit.

In June 2010, the Supreme Court decided <u>Skilling v. United States</u>, 130 S. Ct. 2896 (2010), which involved former Enron CEO Jeffrey Skilling. The Court narrowed the scope of 18 U.S.C. § 1346, holding that "honest services" mail fraud encompasses only bribery and kickback schemes. <u>Id.</u> at 2931. Invoking <u>Skilling</u>, Loren-Maltese brought the instant petition on October 6, 2010, pursuant to 28 U.S.C. § 2241, the general federal habeas corpus statute. She seeks to vacate the judgment of conviction as well as the orders of forfeiture and restitution.[2]

## **DISCUSSION**

Loren-Maltese previously sought and was denied § 2255 relief. She now seeks relief under § 2241. The Seventh Circuit has explained the relationship between the two provisions as follows:

> Ordinarily § 2255 is the exclusive means for a federal prisoner to attack his conviction. But § 2255 contains a "savings clause" permitting prisoners to proceed under § 2241 (usually reserved for attacking the execution, not imposition, of a sentence) in those cases where § 2255 is "inadequate or ineffective to test the legality of [the] detention." 28 U.S.C. § 2255 ¶ 5. We have explained that § 2255 is "inadequate" when its provisions limiting multiple § 2255 motions prevent a prisoner from obtaining review of a legal theory that "establishes the petitioner's actual innocence." See <u>Taylor v. Gilkey</u>, 314 F.3d 832, 835 (7th Cir. 2002). Thus, [petitioner]

---

[2] To bring a § 2241 action, Loren-Maltese must be "in custody." <u>See</u> 28 U.S.C. § 2241(c); <u>Alhassan v. Hagee</u>, 424 F.3d 518, 522 (7th Cir. 2005). Although Loren-Maltese's imprisonment is over, she remains on supervised release, which is a form of custody. <u>See</u> <u>United States v. Trotter</u>, 270 F.3d 1150, 1152 (7th Cir. 2001).

> must first show that the legal theory he advances relies on a change in law that both postdates his first § 2255 motion (for failure to raise a claim the first time around does not render § 2255 "inadequate") and "eludes the permission in section 2255 for successive motions." See In re Davenport, 147 F.3d 605, 611 (7th Cir. 1998). Second, he must establish that his theory supports a non-frivolous claim of actual innocence. See Taylor, 314 F.3d at 835 ("Every court that has addressed the matter has held that § 2255 is 'inadequate or ineffective' only when a structural problem in § 2255 forecloses even one round of effective collateral review-and then only when as in Davenport the claim being foreclosed is one of actual innocence."); see also Cooper v. United States, 199 F.3d 898, 901 (7th Cir. 1999) ("A valid claim of actual innocence would be enforceable under § 2241 . . . if relief under [§ 2255] was not . . . available.").

Kramer v. Olson, 347 F.3d 214, 217 (7th Cir. 2003).

As for the first requirement, Loren-Maltese relies on Skilling, a change in law that postdates her § 2255 motion. In Davenport, the Seventh Circuit stated that the change in law relied upon "has to have been made retroactive by the Supreme Court." 147 F.3d at 611. This requirement would appear to foreclose Loren-Maltese's petition because the Supreme Court has not yet made Skilling retroactive. In United States v. Prevatte, 300 F.3d 792, 801 & n.4 (7th Cir. 2002), however, the Court stated that "the scope of this requirement is uncertain," noting that a later decision of the same court that allowed a § 2241 petition to proceed to a decision on the merits made no mention of the Davenport requirement. The Court also explained that "in other circuits, statutory cases . . . have been treated as not involving a retroactivity issue. Rather, the courts have taken the view that

a decision of the Supreme Court that gives a federal criminal statute a narrower reading than it previously had been given necessarily raises the possibility that an individual previously convicted under the broader reading now stands convicted of activity that Congress never intended to make criminal." Id. at 801. Since Prevatte, the Court of Appeals has not explicitly revisited the issue, but it has ignored Davenport's retroactivity requirement in at least two decisions applying the savings clause. See Kramer, 347 F.3d at 217; Morales v. Bezy, 499 F.3d 668 (7th Cir. 2007); see also Sperberg v. Marberry, No. 08-CV-610-BBC, 2008 WL 5061493, at *2 (W.D. Wis. Nov. 20, 2008) (addressing the uncertain scope of the retroactivity requirement). Given the Court's discussion in Prevatte and its subsequent treatment of the issue, we will give Loren-Maltese the benefit of the doubt and assume that she relies on a sufficient "change in law" because Skilling gave the federal "honest services" fraud statute a narrower reading than it previously had been given.[3] In addition, Skilling is a change in law that "eludes the permission" in § 2255 for successive motions because it involves statutory, not constitutional, interpretation. See, e.g., Prevatte, 300 F.3d at 800.

---

[3] In its brief, the government apparently either concedes or assumes that Loren-Maltese satisfies the first savings-clause requirement because it is silent on the Davenport retroactivity issue, focusing instead on the second requirement of the savings clause--"actual innocence."

The second question is whether Loren-Maltese can establish a non-frivolous claim of actual innocence. Kramer, 347 F.3d at 217. The parties disagree about the meaning of "actual innocence" in this context. The government submits that pursuant to Kramer, actual innocence is established when a petitioner can "admit everything charged in the[] indictment, but the conduct no longer amount[s] to a crime under the statute[] (as correctly understood)."[4] Id. at 218. Loren-Maltese, on the other hand, characterizes this statement in Kramer as dictum and argues that she need only show "the possibility that the conviction[] hinged on conduct Congress never intended to criminalize," another statement from Kramer. Id. Perhaps these standards amount to the same thing in this case, because as discussed below, even assuming that Loren-Maltese must demonstrate merely a possibility that she was convicted of activity that the law does not make criminal, she fails to do so.

In Skilling, the Supreme Court held that 18 U.S.C. § 1346 criminalizes only bribery and kickback schemes--in other words, fraudulently depriving another of one's honest services by

---

[4] Kramer sought habeas relief under § 2241, relying on a Supreme Court decision that overruled precedent allowing for conviction without jury unanimity on the specific predicate violations for a continuing criminal enterprise. The Seventh Circuit found that the petitioner could not advance a non-frivolous claim that he was actually innocent of conducting a criminal enterprise. Id. at 218. The Court distinguished Kramer's claim from other prisoners who "could admit everything charged in their indictment, but the conduct no longer amounted to a crime under the statutes (as correctly understood)." Kramer could not admit committing the charged conduct and still escape punishment; the "jury at Kramer's trial heard evidence that he helped import seven massive boatloads of marijuana . . . into the United States." Id.

accepting bribes or kickbacks. Loren-Maltese contends that "because the government failed to prove that Petitioner received a bribe or kickback, her convictions for honest services fraud must be vacated under Skilling." (Pet. at 13.) She submits that although the government alleged that she received remuneration for her role in the fraud by virtue of the reimbursement of 100 percent of her medical bills, it failed to prove that the reimbursement was a bribe or kickback.

Although Loren-Maltese characterizes her argument as based on the change of law announced in Skilling, in substance it is not. "Skilling . . . did not invalidate the honest services mail fraud statute, nor did it invalidate RICO. Skilling limited prosecutions under these statutes to bribery and kickback schemes." Ryan v. United States, --- F. Supp. 2d ----, 2010 WL 5495015, at *3 (N.D. Ill. Dec. 21, 2010). The theory of honest-services fraud that was presented to the jury in this case and under which Loren-Maltese was convicted was a bribery theory, which is still valid after Skilling. The indictment (and the jury instructions) included bribery as a predicate act for the RICO violation charged in Count I. And as set forth in the jury instructions for the mail and wire fraud charges, the government alleged that as part of the scheme to defraud the Town, Loren-Maltese received things of value from SRC, knowing that the benefits were intended to influence her to authorize fraudulent overpayments to SRC. Essentially, Loren-

Maltese is rehashing an argument that she presented on appeal: that there was insufficient evidence that she received a bribe or kickback. That is water under the bridge. On Loren-Maltese's first appeal, the Court of Appeals acknowledged that the remuneration she received was "modest," but nonetheless concluded: "[T]here was evidence that as a reward for her participation Loren-Maltese received accelerated reimbursement and, more important, reimbursement of 100 percent of the medical expenses incurred by members of her family; there was no evidence that her predecessor had received such largesse." Spano, 421 F.3d at 603. As the Supreme Court stated in Skilling, "[a] criminal defendant who participated in a bribery or kickback scheme . . . cannot tenably complain about prosecution under § 1346 on vagueness grounds." 130 S. Ct. at 2934.

Let us go one step further and assume, as Loren-Maltese asserts, that the honest-services fraud theory presented to the jury does not pass muster under Skilling because the reimbursement of 100 percent of Loren-Maltese's medical bills cannot be considered a "bribe" or "kickback." Petitioner concedes that the government alleged a scheme both to obtain money or property through fraud and to deprive the Town of its right to the honest services of its officials, but argues that her conviction would not stand because it is impossible to tell whether the jury found pecuniary fraud. We are not persuaded. No reasonable jury would

have failed to find that Loren-Maltese participated in the pecuniary fraud.[5] The evidence went way beyond what Loren-Maltese deems "poor performance by a local government official." (Pet. at 13.) There was a great deal of evidence that she "authorized payments by the Town to SRC and knew that SRC was a fraud." See Spano, 421 F.3d at 603. She received repeated warnings about escalating insurance costs and the Town's near-insolvency as well as billing problems with SRC, yet authorized increases in weekly wire transfers to SRC as well as increases in the Town's line of credit to keep up with SRC's payment demands. When a Town deputy treasurer repeatedly raised concerns about SRC and inquired into its billing practices, he was fired. And as the government points out, the fraud was egregious; it cost the Town more than $10 million. In the words of the Seventh Circuit, "[m]illions of dollars that the Town paid to SRC were siphoned to a partnership, Plaza Partners, which was a tool of the conspirators and provided

---

[5]  In United States v. Black, 625 F.3d 386 (7th Cir. 2010), the Seventh Circuit was confronted with a somewhat similar situation post-Skilling. Three counts of mail and wire fraud had been submitted to the jury under two theories: that of a scheme of pecuniary fraud and that of a scheme to deprive a company of its right to the honest services of its officers. Skilling invalidated the honest-services theory because (unlike the instant case) bribes and kickbacks were not proved. The Court framed the issue regarding the validity of the convictions as follows: "[I]f it is not open to reasonable doubt that a reasonable jury would have convicted them of pecuniary fraud, the convictions on the fraud counts will stand." Id. at 388.

them with money and other things of value, including a golf course and a horse farm." Id. at 602.[6]

Like the petitioner in Kramer, see supra note 4, Loren-Maltese is unable to advance a non-frivolous claim of actual innocence. Therefore, her petition is effectively an unauthorized successive § 2255 motion and must be dismissed for lack of jurisdiction.

There is one final matter. In September 2010, we entered a minute order staying the partial final order of forfeiture that was entered in the criminal case as to petitioner's property located at 3818 S. Austin in Cicero, Illinois. We entered the stay solely in the event that the instant petition (which at the time had yet to be filed but was anticipated) had any merit. Because we are dismissing the petition, we will now lift the stay of the partial final order of forfeiture.

## CONCLUSION

For the foregoing reasons, the petition of Betty Loren-Maltese for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 is dismissed for lack of jurisdiction.

---

[6] Our analysis is borne out by the jury's special forfeiture verdict (although it was determined under a preponderance standard). Following its verdict on criminal liability, the jury was instructed to consider whether the convicted defendants' interests in certain real property and money were acquired or maintained in violation of RICO. The jury found that Loren-Maltese acquired or maintained interests in the Wisconsin property as well as in "funds not used for insurance purposes that were taken from the Town of Cicero in violation of" RICO, in the amount of $3,250,000.

DATE:     February 16, 2011

ENTER:    _____
          John F. Grady, United States District Judge